UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kacey Nicole Worsham,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>Commissioner of Social Security,<br><br>　　　　Defendants. | No.  1:25-cv-00666-GSA<br><br>**OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSION OF SOCIAL SECURITY**<br><br>(ECF No. 12, 14) |

**I.     Introduction**

Plaintiff Kacey Nicole Worsham seeks judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income and child's benefits under the Social Security Act.[1]

**II.     Factual and Procedural Background**

On October 13, 2022, Plaintiff applied for child's disability insurance benefits and supplemental security income alleging a disability onset date of July 1, 2018.  The claims were denied initially on January 26, 2023, and on reconsideration on May 4, 2023.  The ALJ held a hearing on November 2, 2023 (AR 40–70), and a supplemental hearing on April 19, 2024 (AR 71–82).  On May 17, 2024, the ALJ issued an unfavorable decision.  AR 14–39.  On April 7, 2025, the Appeals Council denied review (AR 1–6) and this appeal followed.

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. Docs. 7, 9.

1

### III. The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for

work.  42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability; 2- whether the claimant had medically determinable "severe impairments"; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.    The ALJ's Decision

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since the alleged onset date of July 1, 2018.  AR 20.  At step two, the ALJ found that Plaintiff had the following severe impairments: left eye blindness; retinopathy of prematurity of both eyes; myopia and astigmatism in the right eye; generalized anxiety disorder; and dysthymic disorder.  At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 20–23.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels under 20 C.F.R. 416.967(c) but with the following non-exertional limitations: she cannot perform work at unprotected heights or around moving mechanical parts; she cannot drive in a work setting; she

cannot work with sharp objects like tools or knives; <u>she has sufficient visual acuity to handle and work with large objects; she would be able to avoid ordinary workplace hazards, such as boxes on the floor, ajar doors, and approaching people and vehicles</u>; she cannot perform job tasks that require precise near acuity or precise depth perception such as threading a needle; and she is limited to understanding, remembering and carrying out simple instructions.  AR 23–29 (emphasis added).

At step four, the ALJ found that Plaintiff had no past relevant work.  AR 29.  At step five, relying on the VE's testimony, the ALJ found that considering Plaintiff's age, education, work experience and RFC Plaintiff could perform the following jobs existing in significant numbers in the national economy: cleaner II, automatic car wash attendant, bagger, cashier II and sales attendant.  AR 30.  Accordingly, the ALJ concluded that Plaintiff was not disabled since the alleged disability onset date of July 1, 2018.  AR 31.

## V.     Issues Presented

Plaintiff asserts four claims of error: 1- The ALJ failed to properly evaluate the treating medical source opinion of Plaintiff's optometrist, Odette Yang, O.D.; 2- The ALJ failed to properly evaluate the medical source opinions of the State agency medical consultants; 3- The ALJ failed to properly evaluate the examining medical source opinion of the psychological consultative examiner, Charles DeBattista, M.D.;  and, 4- The ALJ failed to properly evaluate the treating medical source opinion of Plaintiff's psychologist, Sheila Sorenson, Psy.D.

### A.     Medical Opinions
#### 1.     Applicable Law

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. § 416.945(a)(1).  The RFC must consider all of the claimant's impairments, severe or not.  20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization and other factors. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and the agency will articulate how the factors of supportability and consistency are considered. *Id.* "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at *6.

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

### 2. Analysis

#### a. Vision Limitations: O.D. Yang

Briefly by way of background, Plaintiff was born prematurely chiefly resulting in retinal detachment and loss of left eye vision (AR 670), right eye cataracts, and other abnormalities (AR 615).

On March 21, 2022, O.D. Yang conducted an eye exam showing left eye blindness, right side 20/80 myopia and astigmatism. AR 680–83, 836–40. Dr. Yang opined Plaintiff was limited to occasional near acuity, far acuity, and field of vision; occasional color vision activities; no

depth perception or accommodation activities; couldn't avoid ordinary workplace hazards such as boxes on the floor, doors ajar, approaching people or vehicles; couldn't work with small or large objects; could occasionally lift and carry 20 pounds and frequently 10 pounds; could frequently stoop and crouch; would need additional breaks; and, would be off task 25% of the day. AR 685–86.

The ALJ addressed the opinion as follows:

> On October 5, 2022, Odette Yang, OD reported that the claimant's visual acuity with best correction was 20/80 on the right and no light perception on the left. She had mild visual field loss in the right eye (Exhibit 10F). Odette Yang, OD opined that the claimant could rarely perform near acuity, far acuity, and field of vision. She could occasionally perform color vision, and she could never perform depth perception or accommodation. She could not avoid ordinary hazards in the workplace. She could not work with small or large objects. She could lift and carry 20 pounds occasionally and 10 pounds frequently. She could frequently stoop and crouch. She would need unscheduled breaks during the workday. She would likely be off task 25% or more of a typical workday (Exhibit 10F). <u>This opinion was not well supported by the medical record or Odette Yang's, findings. This opinion was inconsistent with the opinion of Dr. Sugumaran and with prior administrative medical findings, and it was less persuasive.</u>

AR 27 (emphasis added).

In terms of the supportability factor, Plaintiff contends that Dr. Yang's opinion was well supported by findings and explanation. To that end, Plaintiff highlights many of the same findings Dr. Yang articulated and the ALJ recited: left eye blindness, low vision in the right eye, etc.

Plaintiff further highlights that Dr. Yang: 1- opined Plaintiff had a fair to poor prognosis; 2- noted Plaintiff had <u>a detached retina in her left eye at birth</u>; 3- noted a cataract in her right eye; and 4- recommended that Plaintiff reach out to a community resource center for blind people (COVE). MSJ at 10 (citing AR 680–683) (emphasis added). On balance, Plaintiff asserts that "Dr. Yang's treatment records clearly showed that Plaintiff had debilitating vision dysfunction with blindness in her left eye and low vision in her right eye. Such evidence supported Dr. Yang's medical opinion . . ."

The Commissioner, on the other hand, contends the ALJ correctly pointed out that Dr.

1    Yang's limited findings did not support the far-reaching limitations she assessed (AR 25, 27).
2    Specifically, the Commissioner's argument begins with the contention that neither Dr. Yang's
3    treatment note, nor her opinion, documented findings supporting: 1- restrictions in the weight
4    Plaintiff could lift and carry; 2- her ability to perform postural activities; 3- her need for
5    unscheduled breaks;  and 4- her ability to remain on task (see AR 680-83, 684-86, 836-40).
6        Initially, it is not clear why the Commissioner is defending the ALJ's rejection of
7    exertional limitations and postural limitations when Plaintiff's first claim clearly addresses Dr.
8    Yang's opinion about <u>visual limitations</u>.  See AR 100–01 (PAMF forms distinguishing these 3
9    types of limitations and asking for separate responses as to each).  Thus, the Commissioner's
10   discussion on these points is not particularly responsive.  Moreover, even if Dr. Yang's opinion
11   was unsupported on these unrelated issues this doesn't discredit Dr. Yang's opinion about visual
12   limitations.
13        The Commissioner also argues there was no support for Dr. Yang's opinion that Plaintiff
14   could not deal with workplace hazards "because the evidence showed that Plaintiff was able to
15   get around using glasses, she did not require a cane, and <u>there was no indication that she tripped,
16   ran into objects, or sustained</u> injuries attributable to poor vision."  AR 29, 48, 438 (emphasis
17   added).
18        To the contrary, the page Defendant cites from the hearing transcript does indeed indicate
19   that she ran into objects:

20        Q: When you were in high school and college were you able to avoid hazards at
21        the school like such as objects on the floor, trash cans, other objects?
22        A: <u>No, I would often run into those</u>.
23        Q: Did you ever have to go to the hospital for falling over an object or tripping on
24        an object?
25        A: No.

26   (AR 48) (emphasis added).
27        Further, the transcript does not refute the notion that she may have sustained injuries as a
28   result of running into objects, it only supports the fact that she did not have to go to the hospital

for any injuries. Hence Defendant's argument does not undermine Dr. Yang's opinion that Plaintiff would be unable to avoid workplace hazards such as boxes on the floor, doors ajar, approaching people or vehicles.

Defendant further explains that "While Dr. Yang's treatment note and opinion referenced Plaintiff's visual acuity, <u>mild visual field loss on the right,</u> and <u>her diagnoses</u>, the optometrist did not explain how these findings supported the significant limitations she assessed in all functional areas (AR 684-86)." Resp. at 4 (emphasis added). However, this overlooks that Plaintiff had "no visual field" on the left. Further, Defendant only references non-specific "diagnoses" rather than identify them by name, eg.,"<u>blindness</u> left eye, <u>low vision</u> right eye."[2] These are not average diagnoses and are not devoid of independent functional significance. To be sure, vision issues are certainly a more difficult area to assess as vision loss is not as well translatable as say orthopedic findings like ROM, strength or gait.

Further, the <u>non-examining</u> testifying expert—Dr. Sugumaran—provided no robust explanation in support of her opinion, yet the ALJ nevertheless found it persuasive. AR 77–80, 901–04.

For example:

Q: Doctor, in your opinion, would this claimant be able to avoid regular workplace hazards?

A: Yes.

Q: Yes?

A: Yes.

Q: Okay. Thank you. And then, when you give the opinion that the claimant does not need listing 2.02.

This was followed by a discussion assessing the applicable listings. In so doing, there was no basis to find Dr. Sugamaran's opinion more persuasive than Dr. Yang's based on the brevity

---

[2] The visual acuity in Plaintiff's right eye was 20/80 "after best correction" which the American Optometric Association categorizes as moderate vision loss. https://www.aoa.org/healthy-eyes/caring-for-your-eyes/low-vision-and-vision-rehab

of their discussion, particularly considering Dr. Sugarman's did not examine/treat the claimant. The commissioner emphasizes that under the revised regulations of March 27, 2017,[3] as articulated above, the distinction between treating/examining sources is no longer recognized as a standalone basis to defer one opinion over the other. Yet that distinction would seemingly not be totally irrelevant particularly under circumstances such as here where the non-examining opinion of Dr. Sugarman was based in significant part <u>on a review of</u> <u>Dr. Yang's records</u>, and based on <u>Dr. Yang's examination and corresponding opinion--</u> an examination which Dr. Sugarman was not a part of.

      Specifically, the opinion of the examining expert Dr. Yang—who's records the non-examining Dr. Sugarman reviewed to formulate her opinion—would likely offer at least a marginally more accurate interpretation of the nuances, idiosyncrasies and functional implications of Dr. Yang's own examination. This is a reasonable conclusion even if the opinions were—at the outset—presumed to be on similar footing for the purpose of the revised regulations amended on March 27, 2017, which admittedly do not necessarily defer to any particular opinion, such as a treating source opinion. See 20 C.F.R. § 404.1520c(a).

      Finally, as to the vision impairments, the parties dispute the ALJ's use of the "opinions" of the non-examining consultants' Prior Administrative Medical Findings ("PAMSs"). As Defendant emphasizes, Drs. Pancho and Coffee, the State agency medical consultants, issued PAMFs dated January 23, 2023 and May 2, 2023 and found that Plaintiff had limited near acuity, far acuity, depth perception, accommodation, and field of vision bilaterally based on left eye blindness and visual acuity of 20/80 in the right eye (AR 118-22, 136-39 (Dr. Pancho); AR 157-61, 177-81 (Dr. Coffee)).

      The ALJ found the PAMFs were persuasive. (AR 27; Mot. at 13-14). Defendant's argument however is unpersuasive as to the suggestion that these PAMFs supported the ALJ's rejection of Dr. Yang's opinion. Importantly, these state agency consultants' PAMFs are relevant considerations under the regulations (See, 20 C.F.R. § 404.1513a(b)(1)) only <u>when supported by</u>

---

[3] This regulatory amendment is now fully 8 years old. Perhaps it is no longer necessary to emphasize it as a paradigm shift, or juxtapose it to outdated regulations.

independent clinical findings or other evidence. Saelee, 94 F.3d at 522; Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir.1995)); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Otherwise, they have minimal independent evidentiary value.

Plaintiff explains that Drs. Amon and Panco reviewed the record and opined that Plaintiff had: 1- limited near acuity in both eyes; 2- limited far acuity in both eyes; 3- limited depth perception in both eyes; 4- limited accommodation in both eyes; 5- limited color vision in her left eye; and 6- limited field of vision in both eyes. AR 100–01. Dr. Yang addressed most if not all of these issues with more specificity and explained significant functional limitations they cause. The ALJ's rejection thereof is unsupported. Likewise, Plaintiff's argument that the ALJ's acceptance of the PAMFs warranted limitations distinct from those identified by Dr. Yang is equally unpersuasive. In short, the PAMFs do not undermine Dr. Yang's opinion.

In conclusion, the ALJ's rejection of Dr. Yang's opinion regarding Plaintiff's visual impairments and their functional impact was insufficiently supported where: 1- Plaintiff suffered total blindness in her left eye, moderate vision loss/low vision in her right eye; 2- Dr. Yang was the only medical expert who examined Plaintiff's eyes; and 3- Dr. Suraman's non-examining opinion was based in significant part on her review of Dr. Yang's own records and examination. It seems only reasonable to assume here that Dr. Yang's interpretation of her own records would presumably carry more weight than Dr. Suraman's opinion of same. Remand therefore is appropriate for reconsideration of Dr. Yang's opinion about Plaintiff's visual limitations and their manifestation in a workplace setting.

       **b.**  **Mental Impairments: Drs. DeBattista and Sorenson**

         **i.**  **Dr. DeBattista**

On July 24, 2020, Plaintiff attended a psychological consultative examination with Dr. DeBattista, M.D.. AR. 653. Plaintiff reported having depression, anxiety, worries, hopelessness, worthlessness and chronic problems with concentration and memory. AR 653. Plaintiff exhibited an anxious mood during examination. AR 654. Dr. DeBattista opined that Plaintiff was able to understand, remember and carry out simple one or two step job instructions, and had mild to moderate limitations in her ability to associate with day-to-day work activity – including

1 attendance and safety.  AR 655 (emphasis added))

2 The ALJ found that Dr. DeBattista's medical opinion was persuasive because it was
3 supported by and consistent with the record.  AR 28.  Plaintiff contends that despite this finding
4 the ALJ failed to incorporate the crucial limitations assessed by Dr. DeBattista.

5 Plaintiff emphasizes the mild to moderate limitations in her ability to associate with day-
6 to-day work activity–including attendance and safety.  However, "moderate" mental limitations
7 are not per se disabling.  See, e.g. McLain v. Astrue, 2011 WL 2174895, *6 (C.D. Cal. 2011)
8 ("[m]oderate mental functional limitations . . . are not per se disabling, nor do they preclude the
9 performance of jobs that involve simple, repetitive tasks"); *Rose M. E. v. Saul*, 2021 WL
10 1612091, at *3 (C.D. Cal. Apr. 26, 2021) (SSA defines a 'moderate' limitation to mean '[t]here is
11 more than a slight limitation in this area, but the individual can still function satisfactorily.'")
12 (citing HALLEX (Hearings Appeals and Litigation Law Manual) I-2-5-20, referencing Form HA-
13 1152-U3 (Medical Source Statement of  Ability to do Work-related Activities (Mental)).

14 Thus, if this is true of moderate limitations, it would seem even more true as to mild to
15 moderate limitations Dr. Debattista assessed here.

16 As to absenteeism, an additional hurdle is how to quantify Dr. DeBauttista's qualitative
17 opinion (mild to moderate) into quantitative metrics, such as number of days off per month,
18 percentage of absenteeism, or whether the Vocational Expert would conclude that a work-
19 preclusive threshold of absences or percentage of off task behavior is met.

20                                           **ii.**     **Dr. Sorenson**

21 Finally, Plaintiff contends that the ALJ failed to properly evaluate the treating medical
22 source opinion of Plaintiff's psychologist, Sheila Sorenson, Psy.D.

23 On October 2, 2023, Dr. Sorensen completed a questionnaire.  In most functional areas,
24 Dr. Sorenson opined that Plaintiff had significant limitations, including either: "**Category III**"
25 limitations (precluding performance for 10% of a workday); or **"Category IV"** limitations
26 (precluding performance for 15% or more of a workday) in most functional areas.  AR 888–90.
27 Dr. Sorensen supported her opinion with a general reference to progress and office notes, as well
28 as Plaintiff's vision problems and  mild speech impairment.  AR 890–91.  In a separate opinion

11

dated February 8, 2024, Dr. Sorenson stated Plaintiff had anxiety in new or crowded settings and panic attacks. AR 906.

To begin, regarding the supportability factor, the ALJ found that the psychologist's opinions were unsupported by explanations (AR 29). Defendant contends that Dr. Sorensen presented few objective findings or supporting explanations for the significant limitations she assessed. See 20 C.F.R. § 404.1520c(c)(1); Kitchen v. Kijakazi, 82 F.4th 732, 740-41 (9th Cir. 2023) ("[W]e have accepted the discounting of a medical opinion set forth in a checkbox form with little to no explanation.") (citation omitted); Ford, 950 F.3d at 1155 ("ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation" when evaluating such evidence).

Specifically, Dr. Sorensen reported some stable normal mental status findings with routine therapy and no medication for euthymic mood, normal eye contact, cooperative attitude, clear speech, normal thought processes, normal thought content, average cognition and intelligence, and normal insight and judgment (AR 26, citing AR 731–831).

However, Plaintiff sometimes presented with depression and anxiety despite normal appearance and behavior, normal speech, normal thought processes and thought content, good attention and concentration, good memory, and good or fair insight and judgment (AR 26, citing AR 844–84, 1065–77). She also presented sometimes with poor insight despite other normal findings (AR 26, citing AR 935-1056). Indeed, the objective findings were relatively modest other than depressed and anxious mood and limited insight.

Finally, as to Plaintiff's daily activities, Defendant emphasizes records that: 1- Plaintiff cared for children, prepared their meals, and took them to the park (AR 26, citing AR 796, 799, 811, 820, 876; see also AR 748, 776, 810, 814 (same); 2- she took in-person college classes, walked to school and took public transit by herself (AR 29, 48, 50, 631, 654); 3- AR 733, 757, 830 (attended social gatherings); AR 734 (shopped for groceries); and AR 1009, 1074 (performed housesitting, including caring for dogs)).

Plaintiff clarifies the ALJ's cited activities and provides additional nuance and detail about some of the activities the ALJ cited: 1- she tried to clean dishes and sweep the floor, but

that she did not do such a good job (AR 51); 2- she did not travel (AR 51); 3- She was only able to read or play video games that were within 3 to 4 inches of her eyes (Tr. 55); 4- She would stumble/trip on her way to community college (AR 56); 5- she was not able to avoid objects like trash cans at school due to her poor vision (AR 48); 6- she was usually not alone when she was babysitting her nephew and niece (AR 49); 7- her mom was around to help her (AR 50); and 8- her nephew and niece mostly took care of themselves and that she merely prepared their lunch every so often (AR 49).

Plaintiff thus contends that, "contrary to the ALJ's findings, there was nothing about Plaintiff's daily activities that negated Dr. Sorenson's opinion that Plaintiff experienced an increase in anxiety in any new or crowded setting due to her difficulty with sight, which inhibited her ability to navigate her surroundings (Tr. 906)."

On balance, neither parties' discussion of the daily activities is unfounded. Overall, however, the Commissioner's decision cannot be sustained under circumstances where: 1- Plaintiff objectively suffered near total vision loss in the left eye and moderate vision loss in the right, 2- the lone examining optometrist, Dr. Yang, opined as to work preclusive vision limitations, and **3-** Plaintiff's treating psychologist, Dr. Sorenson, opined based at least in part on some objective abnormalities and subjective reports of panic attacks that Plaintiff experiences debilitating social anxiety and fear of public places due to her vision loss.

### VI.    Conclusion

Substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled. Remand is warranted for the ALJ to conduct further proceedings consistent with this opinion. See Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (noting that, except in rare instances, when a court reverses an agency determination, the proper course is to remand to the agency for additional investigation or explanation.).

Specifically, remand is necessary for reconsideration of Dr. Yang's opinion regarding how Plaintiff's visual limitations likely would manifest in the workplace. This may well necessitate a new clinical examination.

### VII.    Order

Accordingly, it is ordered that:

1. Plaintiff's motion for summary judgment (Doc. 12) is **GRANTED**.
2. Defendant's cross motion (Doc. 14) is **DENIED.**
3. The Clerk of Court is directed to enter judgment in favor of Plaintiff, and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **November 7, 2025**              /s/ Gary S. Austin
                                         UNITED STATES MAGISTRATE JUDGE